UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD DUNN,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C13-5691-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Mr. Dunn seeks review of the denial of his Disability Insurance Benefits applications. He contends the ALJ erred because (1) he failed to find Mr. Dunn's shoulder injury was a severe impairment at step two; (2) his adverse credibility finding was legally insufficient; (3) he improperly rejected the medical opinion of treating physician Dr. Thomas Rafferty; (4) his RFC assessment was incomplete because he failed to include limitations identified by an examining doctor whose opinion he gave "great weight"; and (5) he failed to provide legitimate reasons for rejecting the lay testimony of Mr. Dunn's wife. Dkt. 14. Mr. Dunn further contends the case should be remanded for payment of benefits, rather than for further administrative proceedings. *Id*. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

Mr. Dunn is currently 65 years old, has a high school education and two years of college, and has worked as a forest firefighter, education/custody supervisor, and building maintenance repairer. Tr. 33, 34, 58. On March 31, 2010, he applied for benefits, alleging disability as of March 31, 2010. Tr. 12. His applications were denied initially and on reconsideration. *Id*. The ALJ conducted a hearing on November 23, 2010, finding Mr. Dunn not disabled. Tr. 12-21. As the Appeals Council denied Mr. Dunn's request for review, the ALJ's decision is the Commissioner's final decision. *See* Tr. 1-6.

# THE ALJ'S DECISION

Utilizing the five-step disability evaluation process, [1] the ALJ found:

**Step one:** Mr. Dunn had not engaged in substantial gainful activity since March 31, 2010.

**Step two:** Mr. Dunn had the following severe impairments: paroxysmal supraventricular tachycardia ("PSVT"); history of hiatal hernia repair; hyperlipidemia; and sinus bradycardia.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Mr. Dunn had the residual functional capacity to perform medium work as follows: he could lift up to fifty pounds occasionally and twenty-five pounds frequently and could perform unlimited pushing and pulling within these lifting restrictions; he could stand or walk for six out of eight hours per day and sit for six out of eight hours per day; he could occasionally climb ladders, ropes and scaffolds; he could frequently climb ramps or stairs and could frequently balance, stoop, crouch, kneel, or crawl; he could occasionally reach overhead with the right upper extremity. Mr. Dunn should avoid concentrated exposure to unprotected heights and the use of moving machinery.

**Step four:** Mr. Dunn could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1  Mr. Dunn can perform, he is not disabled.

2  Tr. 12-21.

## DISCUSSION

**A.  The ALJ Did Not Err at Step Two**

At step two, the ALJ found Mr. Dunn "has a partial rotator cuff tear in his right shoulder. However, there is no evidence that this will result in 12 months of impairment."  Tr. 15 (citations omitted).  Mr. Dunn contends the ALJ should have found Mr. Dunn's shoulder injury was a severe impairment, because there is no support for the ALJ's assumption regarding the duration of Mr. Dunn's shoulder impairment.  Dkt. 14 at 5-6.

At step two, Mr. Dunn must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145, (1987); 20 C.F.R. §§ 404.1520(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Id*. (*citing Bowen*, 482 U.S. at 153-54).

The ALJ found Mr. Dunn's impairment failed the duration requirement; *i.e*., that Mr. Dunn had not demonstrated his impairment would last for a continuous period of twelve months. Tr. 15.  Under the twelve-month durational requirement set forth in 42 U.S.C. § 423(d)(1)(A), the term "disability" means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

REPORT AND RECOMMENDATION - 3

death or which has lasted or which can be expected to last for a continuous period of not less than 12 months." Thus, an impairment that has not yet lasted twelve months but that is expected to last that amount of time may meet the duration requirement. *Cf. Barnhart v. Walton*, 535 U.S. 212 (2002).

Mr. Dunn argues that the record shows he reported having pain for four months when he obtained a consultation with a provider in September 2011. Dkt. 14 at 6 (*citing* Tr. 342). Results from an October 2011 MRI reveal Mr. Dunn had glenohumeral joint osteoarthritis and a moderate partial anterior bursal tear. Tr. 334. The MRI findings also described mild to moderate irregularities; moderate "changes related to osteoarthritis"; and "moderate arthrosis…at the AC joint." Tr. 344. Mr. Dunn asserts that at the time of his hearing in November 2011, he testified to having continued shoulder pain and to recently receiving cortisone shots. Dkt. 14 at 6 (*citing* Tr. 53). Mr. Dunn concludes "it is unclear why the ALJ thought that the impairment would resolve in the next six months." Dkt. 14 at 6.

Mr. Dunn has not met his burden to show he is likely to meet the durational requirement. Although he has shown, and the ALJ found, he has a right shoulder impairment, there is scant evidence that his impairment is likely to last twelve continuous months. While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). Mr. Dunn may offer a reasonable interpretation of the record, but the ALJ's conclusion was also reasonable.

As the Commissioner notes, even if Mr. Dunn could provide medical evidence indicating

REPORT AND RECOMMENDATION - 4

his injury was likely to last twelve months, Mr. Dunn points to no evidence to suggest the shoulder injury had more than a minimal effect on his ability to work or that it has prevented him from engaging in basic work activities. *See* Dkt. 19 at 6.  Though Mr. Dunn requests that the Court ignore this argument because it is a "*post hoc* rationalization that was not raised by the ALJ in connection with his Step 2 decision," the Court disagrees.  The very next sentence in the ALJ's decision states "[t]he undersigned has considered these medically determinable impairments and determined that they do not significantly impact the claimant's ability to perform work-related activity, and therefore are nonsevere impairments under 20 CFR 404.1520(c)."

Accordingly, the Court cannot say the ALJ erred in finding Mr. Dunn's shoulder impairment was not severe.  The Court recommends affirming the ALJ's step two findings with respect to this impairment.

**B.      The ALJ Erred in Assessing Mr. Dunn's Credibility**

Where, as here, there is no evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ discounted Mr. Dunn's credibility because he found it was inconsistent with his activities of daily living.  Tr. 18.  In particular, he found that Mr. Dunn was not credible because he wakes early and has breakfast with his wife before checking emails or mowing the lawn; he keeps, cares for, and rides horses; he lifts heavy (40-50 pound) bales of hay; performs housework and yard work; he reads books; cares for his pet dogs and cats; and he is able to walk or drive to shop for groceries.  Tr. 18.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his]

1    overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."
2    *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (*quoting Fair v. Bowen*, 885 F.2d 597,
3    603 (9th Cir. 1989)).  However, a claimant's reported daily activities can form the basis for an
4    adverse credibility determination if they consist of activities that contradict the claimant's "other
5    testimony"; or that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th
6    Cir.2007); *Smolen v. Chater*, 80 F.3d 1273, 1284  n.7 (9th Cir. 1996).

7        The Commissioner contends "the ALJ determined that Plaintiff's description of his daily
8    activities contracted [*sic*] his other testimony that his physical impairments prevented him from
9    working."  Dkt. 19 at 10.  The Commissioner is correct, and therein lies the problem:  the ALJ's
10   entire discussion is merely a summary of some of Mr. Dunn's medical history, followed by a
11   conclusion that Mr. Dunn is not credible because the extent of his activities of daily living "is
12   inconsistent with the claimant's allegation that he is so disabled as to be unable to work."  Tr. 18.
13   But the ALJ fails to identify where in Mr. Dunn's testimony a contradiction arose.  *See, e.g.,*
14   *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ properly found claimant's claimed
15   inability to "tolerate even minimal human interaction was inconsistent with her daily
16   activities…including walking her two children to and from school, attending church, shopping,
17   and taking walks. . .").  Merely reciting Mr. Dunn's medical history accomplishes only part of
18   the job.

19       The Commissioner concedes the ALJ "made not [*sic*] finding on the transferability of the
20   activities" at issue, Dkt. 19 at 10, the only other acceptable grounds for using daily activities to
21   form the basis of an adverse credibility determination.  *See Orn*, 495 F.3d at 639.  The ALJ must
22   make "specific findings relating to [the daily] activities" and their transferability to conclude that
23   a claimant's daily activities warrant an adverse credibility determination.  *Burch v. Barnhart*, 400

REPORT AND RECOMMENDATION - 6

F.3d 676, 681 (9th Cir. 2005).  On this record, the Court concludes that further development of either or both permissible grounds for using daily activities to form the basis of an adverse credibility determination is required if Mr. Dunn's activities of daily living are to be relied upon as part of an adverse credibility determination.

      Generally, when a plaintiff challenges only some of the reasons relied upon by an ALJ in discounting the plaintiff's credibility, the Court engages in a harmless error analysis.  This is because including an erroneous reason among other reasons to discount a claimant's testimony does not negate the validity of the overall credibility determination.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  Those other reasons must be clear and convincing and supported by substantial evidence in the record.  *See, e.g., Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997) ("In weighing a claimant's credibility, the ALJ may consider  . . . inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.").

      The ALJ's decision contained other findings the ALJ apparently relied upon in discounting Mr. Dunn's credibility, but those findings cannot be characterized as clear and convincing—in fact, they can hardly be characterized as "reasons."  Rather, the portion of the ALJ's decision professing to contain the ALJ's reasons for rejecting Mr. Dunn's symptom allegations reads more like a summary of Mr. Dunn's record.  The ALJ discusses Mr. Dunn's history of hyperlipidemia and paroxysmal supraventricular tachycardia, relaying Dr. Craig Wehrli, M.D.'s medical findings in 2010 and 2011.  Tr. 17-18.  The ALJ next discusses Mr. Dunn's visit to St. Peter Hospital in March 2011 for test pain regarding chest pain, relaying he was discharged in stable condition and with no abnormal radiographs.  Tr. 18.  The ALJ also

REPORT AND RECOMMENDATION - 7

discusses Mr. Dunn's history of hernia repair, stating "physical examinations of the claimant have revealed normal signs and the claimant is not significantly limited by this impairment." Tr. 18.

But the ALJ makes no link between his summary findings from the medical record and his conclusions that Mr. Dunn is not credible. Credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

"Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir.2009). The ALJ did not provide any legally adequate reason to reject Mr. Dunn's credibility. Remand is warranted on this issue.

**C.     The ALJ Erred in Rejecting the Opinion of Dr. Thomas Rafferty, M.D.**

Mr. Dunn also argues the ALJ erred in rejecting his treating doctor's opinion that Mr. Dunn should not perform the pack test because he "should not push himself at his age given his hypertension and PAT." Dkt. 14 at 3, Tr. 232. The ALJ assigned "some weight" to Dr. Thomas Rafferty, M.D.'s opinion "to the extent it is consistent with the residual functional capacity and

1  this decision." Tr. 18.  The ALJ found "Dr. Rafferty evaluated the claimant's heart condition
2  and his other physical impairments.  Dr. Rafferty reported that the claimant's hypertension was
3  well-controlled with medications and he considered the claimant's past hernia repair in his
4  findings." *Id.*  The fails to address the portion of the progress note in September 2009 that states
5  "he probably should not push himself at his age given his hypertension and PAT" regarding the
6  "pack test."[3]  *See* Tr. 18; *see also* Tr. 231-232.

7  As a general rule, more weight is accorded to the opinion of a treating physician than to a
8  non-treating physician.  *Lester*, 81 F.3d at 830.  An ALJ must provide "clear and convincing"
9  reasons for rejecting the uncontradicted opinion of a treating or examining physician.  *Id.*  The
10  ALJ's decision must "contain specific reasons for the weight given to the treating source's
11  medical opinion, supported by the evidence in the case record, and must be sufficiently specific
12  to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and
13  the reasons for that weight."  SSR 96-2p.[4]  Here, as the ALJ gave no reasons to reject any portion
14  of Dr. Rafferty's opinion, he failed to provide clear and convincing reasons.  *Lester*, 81 F.3d at
15  830.

16  The Commissioner contends Mr. Dunn has failed to show harmful error because Dr.
17  Rafferty "did not opine that [Mr. Dunn] was incapable of the 'pack test'" and in fact there is no

---

[3] The Court notes that simultaneous treatment notes by Drs. Rafferty and Craig Wehrli, M.D., refer to Mr. Dunn's tachycardias as PAT and PSVT, respectively.  Compare Tr. 231 with Tr. 242.  The ALJ does not discuss PAT whatsoever.

[4] Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations."  *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988)); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988)) (internal citation and footnote omitted).  As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations."  *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984)).

REPORT AND RECOMMENDATION - 9

evidence he was aware of the requirements of the pack test, and because Mr. Dunn cannot show that a restriction against performing the pack test precludes him from medium work.  Dkt. 19 at 4-5.  The Commissioner's arguments are not persuasive.  Though it is true that "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld," *Morgan v. Comm'r, Soc. Sec. Admin*, 169 F.3d 595, 599 (9th Cir. 1999), the Court cannot determine whether the ALJ's decision regarding Dr. Rafferty's assessment was rational, because he provided no basis for discounting his opinion.[5]  The Commissioner's harmless error analysis is speculative at best.  There is no discussion in the ALJ's decision finding Dr. Rafferty's statement that Mr. Dunn "probably should not push himself" had nothing to do with the pack test; there is no evidence to suggest Dr. Rafferty was *not* aware of the requirements of the pack test, particularly because the same notes refer to an "arduous pack test," Tr. 231, and because Mr. Dunn testified he discussed the pack test with his provider; Tr. 42, and the ALJ made no findings that Dr. Rafferty's restriction against performing the pack test was not inconsistent with Mr. Dunn's RFC.  In short, though it may be the case that clear and convincing reasons exist to discount Dr. Rafferty's opinion, the ALJ has failed to provide them.  On remand, the ALJ shall reassess the opinion of Dr. Rafferty, and either credit it in full, or provide clear and convincing reasons for discounting it.

**D.     The ALJ Erred in Evaluating the Opinion of Dr. James Parker, M.D.**

Mr. Dunn next contends the ALJ erred by finding his mental impairments non-severe,

---

[5] *Cf. Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ provides specific reasons supporting an assessment and substantial evidence supports the conclusion, an error in the assessment may be deemed harmless; the relevant inquiry "is not whether the ALJ would have made a different decision absent any error, . . . [but] whether the ALJ's decision remains legally valid, despite such error.") (*citing Batson v. Comm'r , Soc. Sec. Admin*., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).  In other words, the harmless error inquiry is relevant and appropriate when an ALJ provides legally sufficient reasons supporting his assessment, which are also supported by substantial evidence in the record.

REPORT AND RECOMMENDATION - 10

and subsequently failing to limit Mr. Dunn to simple, repetitive tasks due to mental limitations. *See* Dkt. 14 at 10-11.  In specific, Mr. Dunn contends that Dr. James Parker, M.D., who "diagnosed bipolar disorder and anxiety disorder with obsessive compulsive symptoms," also opined that Mr. Dunn should be "limited to simple/repetitive tasks," which the ALJ ignored.  *Id.* (*citing* Tr. 45-46).  Mr. Dunn also contends that Samuel Keith, ARNP, concluded that Mr. Dunn "requires further stabilization of his current treatment for bipolar and would benefit from either a significant change in the requirements of his work or an allowance of retirement due to disability," which the ALJ rejected.  Dkt. 14 at 10; *see also* Tr. 18-19.  The Court interprets Mr. Dunn's arguments as directed at the ALJ's assessment of the medical opinion evidence and other medically-related opinion evidence, and addresses them as such.

      1.      **Dr. James Parker, M.D.**

In finding Mr. Dunn's bipolar affective disorder and anxiety disorder non-severe, the ALJ cited the psychiatric consultative examination performed by Dr. Parker in July 2010, and psychiatric counseling progress notes performed in February and April 2011.[6]  Tr. 15 (*citing* Tr. 253, 327-328).  The ALJ assigned "great weight" to Dr. Parker's opinion, but neither addressed Dr. Parker's opinion that Mr. Dunn should be limited to simple, repetitive tasks; nor incorporated that opinion in his RFC determination.[7]  Tr. 18.  The ALJ also assigned "great weight" to the opinions of John Robinson, Ph.D.,[8] and Edward Beaty, Ph.D., who found that Mr. Dunn was not

---

[6] These notes are practically illegible and contain very little content, but, as recognized by the ALJ, state "mood is stable."  Tr. 15.

[7] In totality, the ALJ's discussion of Dr. Parker states:  "The opinion of James Parker, M.D., is assigned great weight.  Dr. Parker performed a psychiatric consultative examination and opined that the claimant's bi-polar disorder is well-managed and that his mental health conditions are currently under good control.  The opinion of Dr. Parker is assigned great weight because it is consistent with the medical evidence of record and based on the doctor's objective observations."  Tr. 18.

[8] The ALJ's citation to Tr. 294 is in error.  John Robinson's review of Edward Beaty's

REPORT AND RECOMMENDATION - 11

significantly limited after reviewing the treatment notes from Dr. Parker and Mr. Keith.  Tr. 19 (*citing* Tr. 254-266; Tr. 294).  Notably, Mr. Beaty's notes repeat Mr. Parker's medical source opinion that "[c]lmt can perform simple/repetitive tasks at a normal pace & accuracy."  Tr. 266.

In addition to providing "clear and convincing" reasons for rejecting an uncontradicted opinion of a treating or examining physician, *see Lester*, 81 F.3d at 830, an ALJ must also explain why "significant probative evidence has been rejected."[9]  *Id.*  Because the ALJ gave no reason to reject the portions of Dr. Parker's opinion he found inconsistent with the medical evidence of record, he failed to provide reasons that were clear and convincing.

The Commissioner contends the ALJ's failure to incorporate Dr. Parker's assessed limitations into Mr. Dunn's RFC was harmless error because the jobs identified by the Vocational Expert, with a Specified Vocational Preparation ("SVP") of two, are consistent with simple, repetitive tasks.  Dkt. 19 at 12.  Mr. Dunn argues "the SVP does not address the nature of the tasks involved in a job, but merely the amount of training time necessary to learn the job."  Dkt. 20 at 8.  The Court agrees.  Though the Ninth Circuit has not decided the issue, the Western District of Washington and other courts have concluded that the SVP in a DOT listing indicating unskilled work does not address whether the job entails simple, repetitive tasks.  *See, e.g., Wesselius v. Astrue*, 2012 WL 4758067 *6 (W.D.Wash. 2012); *Blakley v. Astrue*, 2009 WL 279029, at *6 (W.D.Wash. 2009); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 982-83 (C.D.Cal. 2005); *Cooper v. Barnhart*, 2004 WL 2381515, at *4 (N.D.Okla. 2004); *Hall v. Barnhart*, 2004 WL 1896969, at *3 (D.Me. 2004); *see also Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997)

---

psychiatric review is found at Tr. 295.

[9] An addition, according to SSR 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *See* SSR 96-8p.

REPORT AND RECOMMENDATION - 12

(noting that reasoning level must be considered separately from a listing of unskilled work). The Western District has noted:

> A job's SVP is focused on "the amount of lapsed time" it takes for a typical worker to learn the job's duties. DOT at 1009. A job's reasoning level, by contrast, gauges the minimal ability a worker needs to complete the job's tasks themselves. As one court noted, "SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of a job's simplicity, which appears to be more squarely addressed by the GED [reasoning level] ratings." *Hall-Grover v. Barnhart*, 2004 WL 1529283, at *4 (D.Me. April 30, 2004). Here, the one vocational consideration directly on point with the limitation contained in the RFC is a job's reasoning level score.

*Blakley*, 2009 WL 279029, at *6. Accordingly, the Commissioner's argument is without merit. The Court finds the ALJ committed harmful legal error. On remand, the ALJ should reevaluate Dr. Parker's opinion.

        **2.**        **Samuel Keith, ARNP**

The ALJ also assigned "little to some weight" to the opinion of Mr. Dunn's treating nurse practitioner. Nurse practitioners are considered "other medical sources," whose opinions must be considered by the ALJ and can be rejected only upon providing germane reasons. *See Molina*, 674 F.3d at 1114. The ALJ may evaluate opinions of other sources using the same factors applied to evaluate medical opinions of acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a) and (d), SSR 06-03p; *Molina*, 674 F.3d at 1111. These factors include the length and frequency of the treating relationship, how consistent the opinion is with other evidence, the evidence the source presents to support the opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment, and any other relevant factors. *Id*. But the ALJ may give less weight to opinions of other sources than to those of acceptable medical sources. *Id*.

REPORT AND RECOMMENDATION - 13

The ALJ rejected the opinion of Samuel Keith because "[h]e opined that the claimant would benefit from either a significant change in the requirements of his work or an allowance of retirement due to disability, but also opined in April 2011 that the claimant's mood was stable." Tr. 19.  While hardly a model of clarity, the Court interprets the ALJ's statement to suggest he found the opinion was inconsistent with Mr. Keith's treatment notes, which is a germane reason to discount his opinions.  Accordingly, the Court finds the ALJ did not err in discounting Mr. Keith's opinions.

**E.    The ALJ Erred in Evaluating the Lay Witness Testimony of Yvonne Dunn**

Mr. Dunn next challenges the ALJ's assessment of his wife's third-party function report. Dkt. 14 at 9-10.  The ALJ assigned "great weight" to Mrs. Dunn's opinions to the extent her opinions were consistent with his RFC assessment.  Tr. 19.  In Mr. Dunn's view, in crediting Mrs. Dunn's opinions to the extent they were consistent with the RFC, the ALJ rejected, without explanation, Mrs. Dunn's observations of her husband's increasing difficulties focusing, completing tasks, and engaging in normal social behaviors.  *See* Dkt. 14 at 9.  The Commissioner argues that any error was harmless because Mrs. Dunn "did not describe any limitations beyond what Plaintiff described," and because "Plaintiff arguably described daily activities that were less restrictive than those described by his wife."[10]  Dkt. 19 at 11.

Mrs. Dunn is also considered an "other source" under the Social Security regulations, and therefore an ALJ may only reject her opinion for "germane" reasons.  *See* 20 C.F.R. §§ 404.1513(a) and (d), SSR 06-03p; *Molina*, 674 F.3d at 1111.  Though the ALJ acknowledged that Mrs. Dunn testified her husband was "becoming increasingly difficult and exhibiting trouble

---

[10] *Compare* Tr. 180 and Tr. 188.  In describing daily activities, Mrs. Dunn contends Mr. Dunn "stays around the house most of the time," while Mr. Dunn's more specific description describes activities such as showering, feeding pets, watching TV, reading the newspaper, and going to his daughter's house.

REPORT AND RECOMMENDATION - 14

with others, such as ridiculing others," Tr. 19, the ALJ failed to explain how his RFC assessment accounts for these impairments and the others identified by Mrs. Dunn, *despite assigning her opinion "great weight."* Germane reasons may exist to discount that opinion, but the ALJ did not provide any, and thereby erred. *See Smolen*, 80 F.3d at 1288-89 (holding that the ALJ can reject the testimony of lay witnesses only upon giving germane reasons).

The Commissioner's argument that any error is harmless is not persuasive. If anything, Mrs. Dunn did describe limitations beyond what Mr. Dunn described, and the Commissioner points to nothing in the record to demonstrate the contrary.[11] The ALJ's failure to directly address and reject this portion of the lay witness testimony was not harmless error.

Thus, on remand the ALJ shall reassess Mrs. Dunn's opinions, either accounting for the functional limitations contained in her opinion in the RFC assessment, or providing germane reasons to discount them.

**F.   Remand**

Finally, Mr. Dunn contends this case should be remanded for payment of benefits. Dkt. 14 at 4-5. The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide
> legally sufficient reasons for rejecting the claimant's evidence; (2)
> there are no outstanding issues that must be resolved before a

---

[11] Mrs. Dunn's third-party function report contains her observations that her husband of 41 years had trouble focusing, Tr. 180, he could not complete tasks, Tr. 181, he "can't get a task done usually" and she has to finish them, Tr. 182, he makes frequent errors in managing finances, Tr. 183-84, he is becoming less social and more irritable, Tr. 184-85, he is combative. Tr. 186, and he could not handle stress, *Id.*

REPORT AND RECOMMENDATION - 15

>determination of disability can be made; and (3) it is clear from the
>record that the ALJ would be required to find the claimant disabled
>if he considered the claimant's evidence.

*Id.* at 1076–77.

In this case, the first criterion has been satisfied, as the Court has identified multiple errors in the ALJ's analysis of the evidence. As to the second and third criteria, however, it is not clear that even if the erroneously discounted or rejected evidence were credited, the ALJ would be required to find the claimant disabled, primarily because it is not clear that the ALJ's ultimate conclusions will be any different after providing proper reasons for rejecting, or even accepting, certain opinions and testimony. Accordingly, the Court recommends the case be remanded for additional proceedings.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings pursuant to sentence four. On remand, the ALJ should reevaluate Mr. Dunn's credibility, the opinion of Dr. Thomas Rafferty, the opinion of Dr. James Parker, and the opinions contained in Mrs. Dunn's third-party function report. As necessary, the ALJ shall supplement the record, revise Mr. Dunn's maximum RFC, and conduct new step four and step five assessments.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **April 23, 2014.** If no objections are filed, the matter will be ready for the Court's consideration on **April 24, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The

REPORT AND RECOMMENDATION - 16

1  failure to timely object may affect the right to appeal.

2  DATED this 9th day of April, 2014.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17